UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LILIT GRIGORYAN,<br><br>Petitioner,<br><br>v.<br><br>MARKWAYNE MULLIN,[1] et al.,<br><br>Respondents. | Case No. 5:26-cv-01382-MCS-AS<br><br>**ORDER RE: EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER (ECF NO. 3)** |

Petitioner Lilit Grigoryan brings this action for a writ of habeas corpus. (Pet., ECF No. 1.) Petitioner filed an ex parte application for a temporary restraining order. (Appl., ECF No. 3.) The Court ordered briefing on the application. (Order Setting Br. Schedule, ECF No. 5.) Respondents Markwayne Mullin, the Warden of the Adelanto East Immigration and Customs Enforcement ("ICE") Processing Center, Todd Lyons, and the Field Office Director for ICE Enforcement and Removal Operations filed an untimely brief indicating "Respondents are not presenting an opposition argument at this time." (Resp. 1, ECF No. 9.) The Court deems the application appropriate for

---

[1] Markwayne Mullin, the current Secretary of Homeland Security, takes the place of Kristi Noem as a defendant pursuant to Federal Rule of Civil Procedure 25(d).

1

decision without oral argument and abrogates the hearing set for April 6, 2026. Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15.

## I.    BACKGROUND

According to the petition and application materials, Petitioner is a citizen of Armenia who entered the United States on March 8, 2024. (Pet. ¶¶ 1–2; Hacobian Decl. ¶ 4, ECF No. 1.)[2] Petitioner was placed in removal proceedings, and she applied for asylum, a withholding of removal, and protection under the Convention Against Torture. (Pet. ¶¶ 3, 26.) She represents that she has complied with all reporting and check-in requirements imposed by ICE and has been "law-abiding" during her time in the United States. (Id. ¶¶ 28, 31; Hacobian Decl. ¶ 5.) She was, however, arrested for suspected petty theft on July 18, 2024, though no charges were ever filed. (Pet. ¶ 29; Hacobian Decl. ¶ 8.) She was arrested a second time for suspected petty theft on March 7, 2026, and a criminal case has been initiated. (Hacobian Decl. ¶ 8.) That case remains pending, and Petitioner intends to dispute the charges. (Id.; Pet. ¶ 31.)

On March 18, 2026, Petitioner was detained at a routine traffic stop. (Pet. ¶ 28; Hacobian Decl. ¶ 6.) She has since been held at the Adelanto East Detention Facility. (Pet. ¶ 7.) Prior to her arrest, Petitioner lived with and served as the primary caretaker for her adult son. (Id. ¶ 32.) She claims that her re-detention without a pre-deprivation hearing violated her rights under the Fifth Amendment's Due Process Clause, and that her continued detention without an individual bond hearing violates her rights under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1226. (Pet. ¶¶ 37–57.) She seeks a temporary restraining order directing Respondents to immediately release her from custody. (Appl. 7.) Alternatively, she seeks an order directing Respondents to provide

---

[2] After filing the instant application, Petitioner submitted a verification in support of her petition. (Suppl. Ex. A ("Verification"), ECF No. 7.) The verification appears to satisfy the requirements laid out in 28 U.S.C. § 2242.

her with a prompt, constitutionally adequate individualized custody determination hearing before a neutral adjudicator. (*Id.*)

## II.   LEGAL STANDARD

The standards governing temporary restraining orders and preliminary injunctions are essentially the same. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. The Ninth Circuit also employs a "version of the sliding scale approach" where "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, an injunction may issue if the plaintiff shows that serious questions go to the merits, the balance of hardships tips sharply toward the plaintiff, the plaintiff is likely to suffer irreparable injury, and an injunction is in the public interest. *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021).

## III.   DISCUSSION

The Court has jurisdiction to consider Petitioner's claims under 28 U.S.C. § 2241. *See Trinidad y Garcia v. Thomas*, 683 F.3d 952, 956 (9th Cir. 2012) (en banc) ("The writ of habeas corpus historically provides a remedy to non-citizens challenging executive detention.").

Petitioner is likely to succeed on the merits of her Fifth Amendment procedural due process claim. (Appl. 5; Pet. ¶¶ 50–57.)[3] "In our society liberty is the norm, and

[3] The Court does not opine on Petitioner's likelihood of success on the merits of her

3

detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The Fifth Amendment provides that "[n]o person shall . . . be deprived of . . . liberty . . . without due process of law." U.S. Const. amend. V. That protection extends to all persons in the United States, "including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Id.* at 690. "Even individuals who face significant constraints on their liberty or over whose liberty the government wields significant discretion retain a protected interest in their liberty." *Garro Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. 2025) (collecting cases).

In *Morrissey v. Brewer*, the Supreme Court recognized that the decision to release a criminal defendant from custody on parole creates "at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions," generating a liberty interest that "is valuable and must be seen as within the protection of" due process. 408 U.S. 471, 482 (1972). District courts in this circuit consistently recognize that this principle extends to individuals subject to removal proceedings; "[j]ust as people on preparole, parole, and probation status have a liberty interest, so too does [a noncitizen] have a liberty interest in remaining out of custody on bond." *Ortega v. Bonnar*, 415 F. Supp. 3d 963, 969 (N.D. Cal. 2019); *accord Garro Pinchi*, 792 F. Supp. 3d at 1032 (collecting cases for the proposition that "even when ICE has the initial discretion to detain or release a noncitizen pending removal proceedings, after that individual is released from custody she has a protected liberty interest in remaining out of custody").

Generally, the Due Process Clause "requires some kind of a hearing *before* the

other claims.

State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127 (1990). To determine what procedures are constitutionally sufficient to protect a liberty interest, courts apply the three-part test established in *Mathews v. Eldridge*:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. 319, 335 (1976); *see Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1206 (9th Cir. 2022) (applying *Mathews* to due process challenge to immigration detention, noting that "*Mathews* remains a flexible test that can and must account for the heightened governmental interest in the immigration detention context"); *Fernández López v. Wofford*, No. 1:25-cv-01226-KES-SKO (HC), 2025 U.S. Dist. LEXIS 205596, at *17 (E.D. Cal. Oct. 17, 2025) (collecting cases extending *Mathews* "to the context of immigration detention").

By declining to submit a meaningful response to the application, Respondents have conceded that, under *Mathews*, Petitioner should have been afforded a pre-deprivation hearing before a neutral adjudicator. (*See* Resp. 1.) First, the verified allegations indicate Petitioner has a substantial private interest in remaining free from ICE custody. Petitioner has been in removal proceedings since August 2024, during which time she has had to regularly check-in with ICE. (Pet. ¶¶ 26, 28; *see* Verification.) She has not missed an appointment or check-in. (*Id.* ¶¶ 28, 33.) The record indicates that Petitioner developed significant ties to the community during her time out of custody, including by serving as the primary caretaker for her adult son. (*Id.* ¶¶ 32–33.) Petitioner's current detention has imposed significant hardship and her family, for whom she is now unable to provide. (*Id.*) Due process thus protects Petitioner's liberty

interest in remaining out of custody so that she can continue to provide for her son and family, just as she has lived for the last two years while under ICE supervision. *See C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 U.S. Dist. LEXIS 216277, at *26–27 (E.D. Cal. Nov. 1, 2025) (finding a petitioner had a constitutionally protected liberty interest in remaining out of ICE custody based on the "approximately four years on parole" preceding his re-detention); *Garro Pinchi*, 792 F. Supp. 3d at 1034 ("Ms. Garro Pinchi justifiably relied on the government's implied promise in obtaining employment, taking on financial responsibility for her family members, and developing community relationships. The more than two years that she has spent out of custody since ICE initially released her have only heightened her liberty interest in remaining out of detention."); *Fernández López*, 2025 U.S. Dist. LEXIS 205596, at *15 ("Petitioner had been out of custody for nearly four years, and during that time, began a life in the United States, living with her partner and complying with the terms of her release. Her detention denies her that freedom.").

Respondents have also conceded that there is an unacceptably high risk that the government would erroneously deprive—or already has erroneously deprived—Petitioner of her liberty interest absent a pre-detention hearing. Civil immigration detention is permissible only to prevent flight or reduce the risk of danger to the community. *Zadvydas*, 533 U.S. at 690–91. The risk of wrongful deprivation is especially high here given allegations that Petitioner has complied with the terms imposed by ICE while her removal proceedings are ongoing. (*See* Pet. ¶¶ 28, 33.) She also is the primary caretaker for her son and has maintained a stable residence. (*Id.* ¶¶ 32–33.) This unrebutted allegations tend to demonstrate that Petitioner does not pose a flight risk. Nor does the record tend to show that Petitioner was a danger to the community at the time of her arrest. While she has been arrested for petty theft twice, the first arrest did not lead to charges, and Petitioner plans to dispute the basis for the second arrest. (*Id.* ¶¶ 29–31.) Respondents have presented no argument that petty theft arrests that have not resulted in any convictions somehow demonstrate Petitioner is a

danger to the community. (*See* Resp. 1.) The record thus raises an inference that Respondents will have difficulty proving that Petitioner's detention is necessary to prevent danger to community or her flight. *Cf., e.g.*, *Pablo Sequen v. Albarran*, 806 F. Supp. 3d 1069, 1089–90 (N.D. Cal. 2025).

Respondents have also conceded that there are no meaningful countervailing government interests that support detaining noncitizens like Petitioner who have complied with the reporting and other monitoring obligations by ICE without a pre-detention hearing. And indeed, many courts, including this one, have regularly found there are no such countervailing interests. *See, e.g.*, *Martinez Cruz v. Lyons*, No. 5:25-cv-02879-MCS-MBK, 2025 WL 4051129, at *4 (C.D. Cal. Nov. 6, 2025) (collecting cases) (Scarsi, J.); *Sira-Hurtado v. Hermosillo*, No. C25-2173-KKE, 2025 U.S. Dist. LEXIS 232795, at *11 (W.D. Wash. Nov. 26, 2025) (finding the "Government's interest in re-detaining noncitizens such as Petitioner who were initially released years ago without a hearing is minimal: any administrative or financial burdens in providing Petitioner a hearing are far outweighed by the risk of erroneous deprivation of the liberty interest at issue.").

In all, Respondents have conceded that Petitioner is likely to succeed on the merits of her Fifth Amendment procedural due process claim and, thus, should have been provided a pre-deprivation hearing before a neutral adjudicator under *Mathews*. Respondents have also conceded that Petitioner is suffering and will continue to suffer irreparable harm through her continued detention and that the balance of equities and public interest tip sharply in Petitioner's favor. Respondents have thus conceded that Petitioner is entitled to preliminary injunctive relief.

The Court exercises its discretion not to require a security. Fed. R. Civ. P. 65(c); *see Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) ("Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*." (internal quotation marks omitted)); *cf. Rodriguez-Flores v. Semaia*, No. CV 25-6900 JGB (JCx), 2025 U.S. Dist. LEXIS 192394, at *14 (C.D. Cal. Aug. 14, 2025) ("Due to the minimal

harms suffered by the government, the Court will not require a security.”).

## IV.    CONCLUSION

The Court grants the application. The Court issues a preliminary injunction as follows:

1. Respondents shall release Petitioner from detention forthwith.

2. Respondents and all of their officers, agents, servants, employees, attorneys, and persons acting on their behalf, in concert, or in participation with them are enjoined from re-detaining Petitioner without providing her a pre-detention hearing before a neutral adjudicator.

Pursuant to General Order No. 05-07, further proceedings on the merits of the petition are referred to the assigned magistrate judge.

**IT IS SO ORDERED.**

Dated: April 2, 2026

_____

MARK C. SCARSI
UNITED STATES DISTRICT JUDGE